**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-196-MOC
(3:13-cr-109-MOC-1)**

| | |
|---|---|
| **TERRY WAYNE GANDY,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

### I. BACKGROUND

Petitioner was indicted in the underlying criminal case for: Count (1), securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5; Count (2), securities fraud conspiracy in violation of 18 U.S.C. § 371; and Count (3), money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i)-(ii). (3:13-cr-109, Doc. No. 3). The "Relevant Entities and People" section of the indictment describes an investment fraud scheme that began in 2000 and continued through 2009, and involved victims including D.K. (2003-2008), J.S. (2006), O.S. (2006), B.E. (2006), and C.S. (2005-2007). (3:13-cr-109, Doc. No. 3 at 1-7). One or more of these acts serve as the overt acts for the conspiracy charged in Count (2). (3:13-cr-109, Doc. No. 3 at 9).

Petitioner pled guilty to Count (2) pursuant to a written plea agreement in exchange for the Government's dismissal of Counts (1) and (3). (3:13-cr-109, Doc. No. 16). In the written plea agreement, Petitioner acknowledged that he was aware that Count (2) is punishable by up to five

1

years' imprisonment, a $250,000 fine, or both, and a period of supervised release. (3:13-cr-109, Doc. No. 16 at 1). He acknowledged that the sentence had not yet been determined and would be at the Court's discretion after a PSR was completed. (3:13-cr-109, Doc. No. 16 at 2). The parties agreed to jointly recommend the following PSR findings and conclusions: the amount of money known to or reasonably foreseeable by Petitioner was more than $1,000,000 and less than $2,500,000; the offense base offense level is six; 16 levels are added for a loss amount above $1,000,000; two levels are added for 10 or more victims; two levels are added for sophisticated means; two levels are added for abuse of position, resulting in an adjusted offense level of 28. The Government agreed that the plea was timely for purposes of acceptance of responsibility. The factual basis would be deferred until the time of sentencing, however, Petitioner stipulated to the existence of a factual basis for the plea, and the Court may use the offense conduct set out in the PSR to establish a factual basis. (3:13-cr-109, Doc. No. 16 at 3). Petitioner acknowledged the rights he was waiving by pleading guilty including the right to a jury trial, to the assistance of counsel, to confront and cross-examine witnesses, and not to be compelled to incriminate himself. He discussed his rights with counsel and agreed to waive all rights to contest his conviction and sentence except for claims of ineffective assistance of counsel or prosecutorial misconduct. (3:13-cr-109, Doc. No. 16 at 4).

  The Rule 11 hearing came before Magistrate Judge Keesler on November 12, 2013. (3:13-cr-109, Doc. No. 39). Petitioner stated under oath that he wanted to plead guilty to Count (2) after consulting with his lawyer. (3:13-cr-109, Doc. No. 39 at 3). Petitioner admitted that he received a copy of the indictment that he discussed with his lawyer. (3:13-cr-109, Doc. No. 39 at 4). The Government summarized the charge in Count (2) to which Petitioner was pleading guilty. (3:13-cr-109, Doc. No. 39 at 5). Petitioner admitted that he went over the charge and its potential

penalties with counsel and understood it. (3:13-cr-109, Doc. No. 39 at 5-6). He talked to counsel about how the U.S. Sentencing Guidelines might apply to his case and that the Court would not be able to determine a sentence until after a PSR has been prepared. (3:13-cr-109, Doc. No. 39 at 7). He understood the rights he was waiving by pleading guilty, including the right to have a speedy jury trial, to summon witnesses, and to confront witnesses, and to make the Government prove its case beyond a reasonable doubt. (3:13-cr-109, Doc. No. 39 at 8). Petitioner admitted that he is guilty of the crime charged in Count (2). (3:13-cr-109, Doc. No. 39 at 9). Petitioner reviewed the plea agreement carefully with his lawyer, understood the terms of the plea agreement, and agreed with the plea including the post-conviction and appellate waivers. (3:13-cr-109, Doc. No. 39 at 12-13). He entered into the plea agreement without any promises, threats, intimidation or force. (3:13-cr-109, Doc. No. 39 at 13). He had enough time to discuss possible defenses with his lawyer and was satisfied with her services. (3:13-cr-109, Doc. No. 39 at 13-14). Petitioner did not have any statements or questions. Counsel stated that she reviewed with Petitioner all features of his case and the terms of his plea agreement, and was satisfied that he understood and knew what he was doing. (3:13-cr-109, Doc. No. 39 at 15).

The PSR sets forth the offense conduct as follows:

> From on or about 2000 and continuing through in or about December 2009, Terry Wayne Gandy engaged in an investment fraud scheme using a variety of bogus companies and as a result defrauded individuals and businesses of more than two million dollars. Additionally, in order to conceal the fraud scheme, Gandy engaged in money laundering transactions.
> …
> Gandy, Perkins, and others induced victims to invest in TakeSix[1] and/or MHS[2] by making a series of false and fraudulent representations, omitting material

---

[1] A North Carolina limited partnership which Gandy owned, operated, and presented as a bona fide investment company even though TakeSix was never registered as a business in North Carolina Gandy.

[2] John Perkins was president of Master Home Solutions (MHS). In or about 2006, Gandy began working with Perkins to fraudulently induce victims to invest in MHS. During the relevant time period, Gandy, Perkins, and other unindicted co-conspirators, used MHS to further the investment fraud scheme by holding it out as a bona fide real estate investment company.

3

facts, and telling deceptive half-truths. Gandy targeted his former co-workers or former employees at Phillip Morris to invest in TakeSix…. Gandy, Perkins, and others, falsely led victims to believe that their money would be invested in several projects, including, among other things, real estate and oil and gas wells. Very little, if any, victim money was invested. Gandy, Perkins, and others diverted victim money to themselves to support their personal lifestyles, which included, among other things, paying bills, buying cars, purchasing real estate, and withdrawing large amounts of cash; diverted victim money to other victims in Ponzi fashion, falsely characterizing such payments as gains on investments in order to induce further investments by such victims; faced with refund demands and withdrawal requests from old victims, diverted new victim money to the older victims in Ponzi fashion in order to conceal and prolong the scheme; and to avoid fulfilling victim withdrawal requests, led victims to falsely believe their money was unavailable because the funds were tied up in investments that had specific maturity periods. In other instances, Gandy, Perkins, and others falsely advised victims to invest additional funds in order to secure the return of their original investment.

Gandy, Perkins, and others falsely led victims to believe that their money would be invested in MHS and that MHS would in turn invest in real estate projects. Victims were told that MHS owned several properties and that MHS was in the process of buying several additional properties. In truth and fact, MHS owned very few properties and neither Gandy, Perkins, nor the others, had any intention of purchasing additional properties.

(3:13-cr-109, Doc. No. 19 at ¶¶ 4, 9, 10).

The PSR includes the solicitations of money from victims by Petitioner and his co-conspirators from various victims as follows:

| | | |
|---|---|---|
| D.K. | 2004 | $300,000 |
| C.S. | 2005 | $50,000 |
| C.S. | 2006 | $67,495 |
| C.S. | 2006 | $250,000 |
| J.S. | 2006 | $100,066 |
| J.S. | 2006 | $79,985 |
| O.S. | 2006 | $50,000 |
| B.E. | 2006 | $55,000 |
| D.K. | 2008 | $80,000 |
| J.M. | 2009 | $20,000 |

(3:13-cr-109, Doc. No. 19 at ¶¶ 11-24).

The PSR calculated the base offense level as six and added 16 levels for a loss amount over $1,000,000, and two levels each for 10 or more victims, sophisticated means, and abuse of a

position of public or private trust. (3:13-cr-109, Doc. No. 19 at ¶¶ 32, 35). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 25. (3:13-cr-109, Doc. No. 19 at ¶¶ 39-41). Petitioner had zero criminal history points and a criminal history category of I. (3:13-cr-109, Doc. No. 19 at ¶¶ 45, 46). The resulting guidelines imprisonment range was **57-60** months. (3:13-cr-109, Doc. No. 19 at ¶ 71).

At the sentencing hearing, Petitioner told the Court that he recalled answering questions that Magistrate Judge Keelser asked him under oath that he answered truthfully and correctly, and that he would still give the same answers. (3:13-cr-109, Doc. No. 40 at 2-3). The Court asked if Petitioner answered the questions that way, and is going forward with the plea because he did commit the crime he is pleading guilty to, and Petitioner responded "Yes, sir." (3:13-cr-109, Doc. No. 40 at 3). The parties stipulated to the factual basis set forth in the PSR. (3:13-cr-109, Doc. No. 40 at 3-4). Petitioner admitted that he read the PSR, went over it with counsel, and believed he understood it. (3:13-cr-109, Doc. No. 40 at 4). The Court adopted the PSR and its sentencing range of 57-60 months. (3:13-cr-109, Doc. No. 40 at 7).

Defense counsel sought a downward variance of four levels and a sentencing range of 37 to 46 months based on the nature and circumstances of the offense, including Petitioner's acceptance of responsibility "very early on" in the case and his remorse. (3:13-cr-109, Doc. No. 40 at 8). Counsel also noted factors including sentencing disparity with the co-conspirators, and Petitioner's history and characteristics. (3:13-cr-109, Doc. No. 40 at 9-15).

Petitioner chose to address the Court, repeatedly stated that he is "truly remorseful," would like to have the opportunity to begin repaying the victims, that he will "accept whatever [punishment] the court deems necessary" and that it will never happen again. (3:13-cr-109, Doc.

No. 40 at 16). Petitioner's mother addressed the Court and requested leniency. (3:13-cr-109, Doc. No. 40 at 16-17).

The Government recommended a 57-month sentence at the bottom of the guidelines range. It opposed a downward variance, disputed counsel's claim of sentencing disparity, and noted that Petitioner had lied to North Carolina Securities Commission and FBI agents. (3:13-cr-109, Doc. No. 40 at 17-19). The prosecutor explained that Petitioner was getting a substantial benefit from the plea because he was originally charged with two additional counts, which had 15-year and 20-year statutory maximum sentences,[3] whereas his sentencing exposure under the plea agreement was only 60 months. (3:13-cr-109, Doc. No. 40 at 23).

The Court sentenced Petitioner to 57 months' imprisonment followed by three years of supervised release on January 12, 2015, and added restitution of $3,656,739.85 on March 10, 2015. (3:13-cr-109, Doc. No. 40 at 31); (3:13-cr-109, Doc. Nos. 27, 38). Petitioner filed then, on April 21, 2015, voluntarily dismissed a direct appeal. (3:13-cr-109, Doc. No. 41).

Petitioner timely filed the instant § 2255 Motion to Vacate on April 18, 2016, arguing that ineffective assistance of counsel rendered his plea involuntary. (Doc. No. 1); see (Doc. No. 4) (supporting memorandum). First, Petitioner alleges that counsel repeatedly advising him and his mother that he was facing 12 to 14 years (135-168 months) if he lost at trial. See (Doc. No. 4 at 34, 39). Counsel never discussed grouping, which led Petitioner to believe that, if he was convicted, the sentence for each count would run consecutively.

Second, Petitioner claims that he asked counsel on numerous occasions to investigate claims by victims D.K. and J.M. that were presented to the grand jury, and upon which the

---

[3] Counts (1) and (3) actually each carry a 20-year statutory maximum. See 18 U.S.C. § 1956(a)(1)(B)(i)-(ii); 15 U.S.C. § 78ff.

6

indictment was based. Petitioner told counsel that he actually made personal loans to these two people and that their statements were either fabricated or misconstrued, which would provide grounds to move to quash the indictment because the other acts contained in the indictment were outside the statute of limitations. Counsel told Petitioner she would look into the issue. When counsel and Petitioner met in September or October 2013 to review discovery, counsel told Petitioner that the facts uncovered by her investigator coincided with the Government's allegations. She also stated that, even if D.K. and J.M. contradicted the Government's version, they would likely be charged with lying to a federal agent. (Doc. No. 4 at 35). Petitioner reiterated his belief in October 2013, that statements by D.K. and J.M. could exonerate him of any activities during the statute of limitations, providing grounds to quash the indictment. Counsel again led Petitioner to believe that her investigator confirmed the Government's version of events. Counsel's statements led Petitioner to believe that she had conducted a reasonable investigation regarding the witnesses' statements that put his activities within the statute of limitations. Petitioner was precluded from investigating the issue himself because one of the victims was a family member through marriage and the conditions of Petitioner's release precluded him from discussing the case with his family.

Petitioner initially insisted on going to trial, but counsel asked him to think about pleading guilty, stating "who do you think the jury will believe? You, or the FBI?" (Doc. No. 4 at 36). Counsel told Petitioner that he faced 12 to 14 years and that he would likely receive the high end if he went to trial because he put the Government through the burden of trial. She also told him that Government said this case had the most evidence against anyone it had ever seen. (Doc. No. 4 at 35). Petitioner signed a plea agreement based on counsel's assertions about the investigation conducted by her office regarding the victims' statements, and her advice about the sentencing

exposure. Had Petitioner known his correct sentencing exposure, he would not have entered a guilty plea and instead would have exercised his right to a jury trial. (Doc. No. 4 at 37).

After sentencing, the Petitioner determined that his sentencing exposure was only 78-97 months when the counts were grouped, rather than the 135-168 month estimate that counsel provided. Petitioner also learned after sentencing that J.K. and D.M. were never contacted by counsel or counsel's investigator. (Doc. No. 4 at 17). Moreover, the facts uncovered by his own inquiries contradicted the Government's version of events. Petitioner has filed a sworn statement by J.K. saying that he made a personal loan of $80,000 to Petitioner, not an investment, and that he was never contacted by counsel or an investigator about Petitioner's criminal charges. (Doc. No. 4 at 42). Without J.K.'s alleged statements, the overt act would have been contradicted and Petitioner's prosecution for securities fraud conspiracy would have been barred by the statute of limitations. (Doc. No. 4 at 24-26). Petitioner is prejudiced because he is serving 57 months rather than having the indictment dismissed.

Petitioner claims that he was inclined toward trial and, had counsel correctly informed him of his sentencing exposure under the guidelines and grouping principles, he would have exercised his right to a jury trial. (Doc. No. 4 at 29).

The Government has filed a Response arguing that counsel's performance was not deficient with regards to either her investigation or sentencing estimate, that Petitioner failed to allege that he would not have pled guilty but for counsel's alleged failure to investigate victims D.K. and J.M., and that he cannot demonstrate prejudice because it would not have been rational to go to trial rather than entering the plea. (Doc. No. 8).

Petitioner filed a Reply reiterating his arguments and alleging that, had counsel properly investigated D.K. and J.M., there would have been an available defense that would have altered his decision to accept the plea and Petitioner would have gone to trial. (Doc. No. 9 at 1).

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Rather, he is limited to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases. Id. Statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005); see also Fields v. Attorney Gen., 956 F.2d 1290, 1299 (4th

Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.").

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the

petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Surmounting Strickland's high bar is never an easy task in the guilty plea setting. Padilla v. Kentucky, 559 U.S. 356 (2010). The strong societal interest in finality has "special force with respect to convictions based on guilty pleas." United States v. Timmreck, 441 U.S. 780, 784 (1979). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Lee v. United States, 137 S.Ct. 1958, 1967 (2017). Instead, judges should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). A petitioner must convince the court that the decision to go to trial would have been rational under the circumstances. United States v. Dyess, 730 F.3d 354, 361 (4th Cir. 2013).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims

11

set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

Petitioner contends that counsel's misadvice about his sentencing exposure and her deficient investigation of victims D.K. and J.M. rendered his guilty plea involuntary.

The record reveals that Petitioner's guilty plea to Count (2) was knowing and voluntary. Petitioner stated under oath at the Rule 11 hearing that he received a copy of the indictment and reviewed it with his attorney, understood the charge and his sentencing exposure, that he had enough time to discuss any possible defenses with counsel, with whom he was satisfied, that he is guilty of the charged offense, and nobody made him any promises of leniency to induce his plea. He also stated that he understood the rights he was waiving by entering his plea and the elements of the offense to which he was pleading guilty. These statements are presumptively correct. Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221-22 (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Petitioner's present claim that counsel conducted an inadequate investigation prior to his guilty plea fails to overcome his sworn admission of guilt. He has not submitted a sworn statement from D.M. or any other evidence to show that the allegations with regards to him are untrue, and thus, has failed to overcome his guilty plea's presumption of correctness as to that issue. With

12

regards to J.K, Petitioner has submitted a document that purports to be a sworn statement by J.K. claiming that he made Petitioner a personal loan of $80,000. Assuming, *arguendo*, J.K.'s statement is authentic, it does nothing to invalidate the indictment on limitations grounds or exculpate Petitioner in any way.

The statute of limitations for Count (2) is five years. 18 U.S.C. § 371. Statutes of limitations normally begin to run when the crime is complete. Toussie v. United States, 397 U.S. 112, 115 (1970). The general rule is that, in order to avoid the five-year statute of limitations for conspiracies, the government must prove an overt act in furtherance of the conspiracy committed within the limitations period. United States v. Head, 641 F.2d 174, 177 (4th Cir. 1981).

The indictment, filed on April 16, 2013, charged an investment fraud scheme from 2000 to 2009 involving overt acts against five victims between 2003 and 2008. (3:13-cr-109, Doc. No. 3 at 3-6). Petitioner admitted as part of his guilty plea to Count (2) that he is guilty of securities fraud conspiracy as charged in the indictment. Petitioner also admitted at sentencing that the facts set forth in the PSR are true; this includes his involvement in an investment fraud scheme from about 2000 continuing through about December 2009, a transaction with D.K. for $80,000 in 2008 and one for $20,000 with J.M. in 2009. (3:13-cr-109, Doc. No. 19 at 4-25).

Even if the $80,000 transaction with J.K. was a personal loan, this does not remove Petitioner from the conspiracy statute of limitations, which is supported by the transaction with J.M. in 2009 that he admitted, and which he has failed to rebut with any evidence. Counsel cannot be deemed ineffective for having advised Petitioner to plead guilty because, even if the 2008 transaction with J.K. is eliminated, there are no grounds to challenge the indictment on the statute of limitations or otherwise exculpate Petitioner.

Petitioner has also failed to carry his burden of demonstrating that counsel misadvised him about his potential sentence if he lost at trial. Petitioner conclusively asserts that his advisory guideline range after trial would have been 78-97 months if the counts had been properly grouped, rather than the 135-168 months that counsel predicted. Petitioner fails to support his assertion with a guideline calculation or any other evidence that counsel's estimate was incorrect. On the other hand, the Government has presented a calculation in its Response that appears to be correct and corresponds with the range that counsel predicted prior to trial.[4] Counsel was not deficient for advising Petitioner to plead guilty and cap his sentencing exposure to 60 months based on an accurate guideline prediction should he lose at trial, a maximum sentencing exposure of 45 years, and the strong evidence of his guilt.

Moreover, Petitioner has failed to demonstrate prejudice because the claim that he would not have pled guilty to Count (2) but for counsel's misadvice is not rational. Petitioner pled guilty to a single conspiracy count with a statutory maximum sentence of 60 months. The plea agreement called for dismissal of two additional counts that were punishable by 20 year statutory maximum sentences, favorable joint recommendations regarding the guidelines calculation, and the possibility of credit for acceptance of responsibility. The Court adopted the PSR that followed the parties' joint recommendations and credited Petitioner with a three-level deduction for acceptance of responsibility, resulting in an advisory guideline range of 57-60 months' imprisonment. See (3:13-cr-109, Doc. No. 19 at ¶ 71). Counsel sought a downward variance which the Court denied in favor of a sentence of 57 months at the bottom of the advisory guideline range. Petitioner has

---

[4] Specifically, dismissal of the money laundering allowed him to avoid a 2-level adjustment under 2S1.1(b)(2)(B) for a conviction under 18 U.S.C. § 1956. Dismissal of the securities fraud allowed him to avoid one offense level under 2B1.1(a)(1); if the court had adopted the loss amount determined by probation ($3,656,739.85) instead of the loss amount the US agreed to under the plea agreement (under $2.5 m), he would have received two additional offense levels. If he had gone to trial, he would not received a 3-level adjustment for acceptance of responsibility. His offense level at trial would have likely been 33, resulting in a range of 135-168 months. See (Doc. No. 8 at 13-14).

failed to demonstrate that rejecting the plea offer and proceeding to trial would have been rational under these circumstances. See, e.g., Fox v. United States, 2017 WL 4404676 (6th Cir. July 27, 2017) (jurists of reason could not disagree with the district court's conclusion that petitioner failed to demonstrate prejudice where he faced overwhelming evidence of guilt, lacked a viable defense, and reaped significant benefits from the government, including the dismissal of two counts, a ten-year sentence recommendation, and an oral agreement not to bring a superseding indictment charging additional offenses, a two-level reduction for acceptance of responsibility, and a sentence below the guideline range).

Petitioner has failed to carry his burden of demonstrating either deficient performance or prejudice, and therefore, the § 2255 motion will be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Petitioner's § 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive

procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: January 26, 2018

Max O. Cogburn Jr.
United States District Judge